## SCOTT v. CLARK et al., Commissioners, &c.

The act of January 24, 1855, entitled "An act in relation to the taking effect of general laws," which provides "that whenever the governor of the state shall deem it necessary that any law or laws of a general nature should take effect at an earlier day than by their general publication and distribution, he may, in writing, direct any such law to be published in any papers published in this state, and from such publication, thus directed, such law shall be in full force and effect," is unconstitutional.

The power conferred upon the General Assembly by the twenty-seventh section of the third article of the constitution, which provides that, "if the General Assembly shall deem any law of immediate importance, they may provide that the same shall take effect by publication in newspapers in the

state," cannot constitutionally be conferred upon the governor, or any other person.

Even if the act of January 24, 1855, was not unconstitutional, the act of January 25, 1855, entitled "An act to relocate the seat of government," is not one of that class of acts which the governor was authorized to publish by the first-named act—that authorizing him only to publish laws of a general nature, and the act for the relocation of the seat of government, being a public and special, and not a public and general law.

The act of January 25, 1855, entitled "An act to relocate the seat of government," did not take effect by publication in the newspapers.

An information in the nature of a *quo warranto*, being against public officers, or corporations, or persons claiming to hold offices in corporations, and only against such persons and bodies, and being, to some extent, criminal in its nature, must generally be brought in the name of the state.

Such a proceeding can be prosecuted by the public law officer only, although he may do it upon the *relation* of an individual, and even for the benefit of such individual.

Such an information cannot be filed without the consent of the proper prosecuting attorney; and if he refuses, he may be directed so to do, by the governor, the General Assembly, or the District Court.

A private individual cannot so take and handle a high prerogative, or state writ, as to commence the proceeding in his own name; and the courts can prevent such a use of a state proceeding, and will do so, by dismissing the information, at the costs of the relator.

## *Appeal from the Polk District Court.*

THIS was a proceeding in the nature of a *quo warranto*, commenced by Scott, as relator, against Lincoln Clark and others, commissioners to relocate the seat of government of the state of Iowa. The pleadings and facts of the case are stated in the opinion of the court. Judgment was rendered in favor of defendants for costs. Scott appeals, and assigns for error the following:

1. The court erred in overruling the demurrer to the answer of the defendants.

2. The court erred in finding that the act entitled "An act to relocate the seat of government of the state of Iowa," was in force as a law of this state from and after its publication by order of the governor.

3. The court erred in finding that said commissioners had, at the time, a lawful right to relocate the seat of government within the limits prescribed in said act, as was severally

found, and is specified, in the record and judgment of said court.

4. The court erred in rendering judgment for the relator for costs.

No counsel appeared for the appellant in this court, but *Henry O'Connor* and *W. Penn. Clarke*, on motion, were permitted to argue the questions involved, as friends of the court, who contended:

The proceeding by *quo warranto* is a *quasi* criminal proceeding, and can only be prosecuted in the name of the state. This doctrine is recognized without exception. *Wallace* v. *Anderson*, 5 Wheat. 291; 3 U. S. Dig. 311. The Code does not in any way modify or change the law. Code, 299; Laws of 1853, 46. The record clearly and distinctly raises two questions, either of which this court will take notice of, whether raised formally or not, if they are apparent upon the record, viz: the question of jurisdiction, and the constitutionality of an act of the legislature. 3 How. (U. S.) 574; 1 Kent Com. 450. The prosecution not being in the name of the state, but in that of a private individual, nor conducted by the proper law officer, there can be no doubt about the want of jurisdiction. Code, 297; *People of the State of New York* v. *Utica Ins. Co.*, 15 Johns. 358. The main question is not as to whether or not a law shall take effect upon a contingency. It is the simple question, whether the act, under which the governor appointed, or claimed to appoint, the commissioners to relocate the seat of government, and under which the commissioners claim to act, was in force at the time they undertook to officiate? The constitution makes special provision for the publication of such laws as the *General Assembly shall deem of immediate importance—they* (the legislature) may provide that the same shall take effect by publication in the newspapers of the state. The legislature is to be the judge of the necessity and importance of the law. It is a power that must be exercised by the body on whom it is conferred, and cannot be delegated. The confidence is reposed in the law-making power, and that alone. The act of January 24, 1855, con-

ferring on the governor the power to publish laws—to exercise authority conferred upon another department of the government—is, therefore, unconstitutional. *Calkin* v. *The State*, 1 G. Greene, 68. There was no legal publication of the act for the relocation of the seat of government, and the commissioners were acting without authority. But even if the act of January 24 is not unconstitutional, the act for the relocation of the seat of government is not such a law as, by the terms of the former act, the governor was authorized to publish. The act of January 24, authorized that officer to publish such laws of a *general* nature, as he deemed it necessary, &c. The power extends only to and over laws of a general nature, but the act for the relocation of the seat of government, is not such a statute. It is a public and special, not a public and general, law. Code, 8—where the distinction is laid down. The publication made was not warranted by the statute, and a publication, without authority of law, is of no validity. Upon both grounds, therefore, the judgment of the court below is erroneous, and must be reversed.

*Knapp & Caldwell* and *Jos. Williams*, for appellees.

This is a proceeding at law, and must be determined in this court like any other civil suit. There was a fair trial upon issues joined, and a finding on all the issues for the defendants. There being no bill of exceptions, this court cannot know what the testimony was, but the presumption is, that the District Court had sufficient evidence before it, to warrant the finding. The law is just as well settled, and upon equally just grounds, that no matter or error will be considered in the court of errors, which has not been made below, and no objection will be considered that was not passed upon by that court. This doctrine applies to the sustaining or overruling of demurrers. If no exception is taken to the overruling of a demurrer, and the party pleads over, either by answer or replication, the court of errors will presume that the error of such ruling was waived. The party must stand upon his demurrer, and suffer judgment to

go against him; or, if he pleads over, he must save his objection by a bill of exceptions. This has not been done in this case. Where there is no statement of facts in the record, nothing can be assigned as error of law, which could have been cured by evidence given at the trial, and until the contrary is shown, the appellate court is bound to presume that the evidence was sufficient to sustain the judgment. 1 Texas, 192; 10 U. S. Dig. 111; *Durham* v. *Benedict*, 1 G. Greene, 74; *Mackemer* v. *Benner*, 1 Ib. 157; *Saum* v. *Board Com. of Jones Co.*, 1 Ib. 165; *Hemphill* v. *Salladay*, 1 Ib. 301; 8 How. (U. S.) 263; 10 U. S. Dig. 189; 4 Ib. 38; 18 Ohio, 28.

The reversal or affirmance of the finding and judgment of the court below, depends—as is assumed—upon the question whether the law authorizing a relocation of the capital, took effect from the date of the publication thereof in the newspapers, or not until circulated in the several counties of the state, as required by the constitution. Art. 3, § 27. The language of the constitution is this: "If the General Assembly shall deem any law of immediate importance, they may *provide* that the same shall take effect by publication in the newspapers in the state." Did the General Assembly *provide* for the taking effect of the law in question by publication? and, if so, was it published in accordance with that provision? What definition or meaning should be given to the word *provide*, as used in the constitution? We claim that it means "to take measures;" and upon such interpretation, what mode is pointed out by the constitution? The mode adopted by the General Assembly in this case, was by directing the governor to order the publication of this, amongst other laws. The objection to this mode of causing the law to be published, is, that it is a delegation of their legislative power. This is not so. The law was fully formed and adopted, and approved by the governor—all its principles, its rules, its provisions, were complete. No legislative action or power was necessary further, and of course none could have been delegated. The power conferred was to cause *publication*, not to legislate at all. Legislative power

is the power of making laws.   The legislature *passed* this law
—they expressed the judgment that such a law should exist
—and it is a mistake to confound the power to cause the *publi-
cation* and *promulgation* of laws, with the power to *make* them.

It is undoubtedly the established rule now, that it is com-
petent for a legislative body to make the *time* of taking
effect of laws, as also the question whether they shall take
effect *at all or not*, to depend upon any contingency they
may elect, such as a vote of the people, the publication of
the same, or the acceding to *certain conditions*, by a state or
the people thereof.   3 U. S. Laws, 2074; *Bank of Michigan*
v. *Williams*, 5 Wend. 478; *Williams* v. *Bank of Michigan*,
7 Ib. 539.   These authorities have reference to the passage
of laws by the governor and judges of the North West ter-
ritory, to take effect and be in force upon the happening of
a contingency—the approval of Congress.   The legislature
may make the revival of an act, depend upon a future event.
*The cargo of the Brig Aurora, Burnside, Claimant* v. *The
United States*, 7 Cranch, 382.   If the legislature can make
the *revival* of a law dependent on a future event, so can it
the *taking effect* of a law—a delegation of power is involved
in both.   The case of *Calkin* v. *The State*, 1 G. Greene, 68,
relied upon by the other side, is not in point.   No question
of this kind arose in the case.   Talk, by a judge, that has no
relation to the points to be decided, is worth just as much as
the *talk* of any other person, of equal legal ability.   In that
case, there had been no direction given by the legislature,
for the publication of the law at all, but in this direction
has been given, and the only question is, was it properly
given.   For instances where the legislative authority has
deputed others to act in some manner before the act passed
should take effect, we refer to the acts authorizing the pres-
ident to give notice in respect to the joint occupation of
Oregon, and the act for the admission of Texas, on a vote of
the people.   The acts of 1809 and 1810, repealing the non-
intercourse laws on a subsequent event, to be made known
on the president's proclamation, are of this character—sus-
tained by the Supreme Court of the United States, in *The*

*Aurora* v. *The United States,* 7 Cranch, 38; 3 State Papers, 297. The universality of this mode of procedure by legislative bodies, may be regarded as a strong circumstance in favor of their correctness. To show some of these acts, and the opinions of courts upon them, we refer to *Pratt* v. *Allen,* 13 Conn. 119; Laws of Kentucky, 1842; 4 B. Monroe, 146; Met. & Peck. Dig. 566; 12 Pick. 184; 7 Cowen, 349; 2 Overton, 171; 2 Yeates, 493; 2 Marshall, 483; Laws of Mich. 1845, ch. 40; Laws of Vermont, 1846, ch. 24; Laws of Ohio, 1847, 131; Laws of New York, 1845, 322; Laws of Penn. 1846, 348; Laws of North Carolina, 1849, ch. 36; 8 Laws of Del. 21; 3 Harrison, 335; 3 Kent Com. 278; *The People* v. *Morris,* 13 Wend. 335.

WOODWARD, J.—The relator sets out in his petition part of the act of January 25th, 1855, Session Laws, p. 105, entitled "An act to relocate the seat of government," and annexes a copy of the whole act, praying that it may be taken as a part of his petition. The last publication of this act was on the 6th of March, 1855. The answer sets out the whole of the act, entitled "An act in relation to the taking effect of general laws," which was approved January 24th, 1855, and was last published January 31st, 1855. The answer does not show when the defendants were appointed, but the petition avers that they were appointed previous to the first of April. The answer avers that the principal act, that under which they were appointed, as well as that authorizing the governor to publish certain acts, was published on or about the 25th January, 1855. There was a demurrer to the answer, which was overruled, and the plaintiff replied, denying that the act of the 25th of January was in force, when the commissioners acted. The cause was submitted to the court upon the petition, answer and replication, according to the record, without other evidence.

The court finds (and this finding is entered of record) that the legislature did pass the act of 25th of January; that that act provided for the appointment of five commissioners, &c., &c., that this act was published on or about the 25th

Scott v. Clark et al.

of January, 1855; that it was so published by order of the governor; that the governor was authorized so to publish it by virtue of "an act in relation to the taking effect of general laws:" that the commissioners were about to relocate the seat of government of the state of Iowa; and that they had at that time, and still have, a lawful right to relocate the same.

The counsel for the defendants claims that this cause is to be tried by the same rules that other causes are, and that the same presumptions in favor of a court of general jurisdiction, are to be entertained; and he says that there was a fair trial upon issues joined, and a finding upon all the issues for the defendants, &c. Why are we thus exhorted? We will certainly endeavor to apply the same rules of law to this cause, that we do to others.

It will be noticed that the only issues are issues of *law*. The relator avers that the principal act was not in force, and the defendants *deny* that it was *not* in force. The one party claims that, therefore, the commissioners had no authority to act, and the other that they had. The cause is not here upon the demurrer, as counsel seems to suppose, but upon the petition, answer and reply, with the public laws of the land, and these incorporated in the pleadings. In other words, it is here upon the finding of the court upon those pleadings and laws. There is no call for the exercise of a presumption in favor of the court, except in relation to the time of the appointment of the commissioners, which does not appear in the pleadings. It is not shown that they were appointed after the 26th of March, the day on which the principal act took effect, according to the defendants' reasoning. But we will presume the court had proper evidence in relation to this, notwithstanding the record says the cause came on for hearing on petition, answer and replication. But how shall we manage this doctrine of presumption, when the court finds that the principal act (25th January) was published on or about the 25th of January, while the secretary's certificate says, it was published on the 28th of February and 6th of March? Shall the presumption

fail, or the certificate? If the latter, then there is no evi-
dence that it was published at all. It will therefore be
more favorable to the defendants, to follow the certificate.

We then approach the principal question, thus: the act
empowering the governor to publish acts, was published on
the 31st of January, and was to take effect from and after
such publication. The act to relocate the seat of govern-
ment (under which defendants were appointed) was pub-
lished on the 6th of March, and by the Code, § 21, took
effect on the 26th of the same month, if the publication was
authorized. Its own 11th section, provides that it shall
take effect from and after its passage, but this is not war-
ranted by the constitution. We come then to the main
question, was the governor constitutionally empowered to
publish the act of 25th January in the newspapers, and by
so doing, did he give it effect? The act of 24th of Janu-
ary, which is supposed to give him this authority, says he
may so publish laws of a "*general*" nature. Is the act so
published by him, one of a *general* nature? The usual *legal*
distinction of acts, is into public and private. But there is
a distinction of a legislative character between the general
and special, which is recognized by section 28 of the Code,
and see 7 Bac. Ab. (1832) p. 444, note. Of the special char-
acter, are the two acts we are now considering. They are
without doubt *public*, but not *general*. Then, the act to re-
locate the seat of government is not one of the class of acts
which he was authorized to publish. But we do not prefer
to leave the cause resting upon this point, but pass to
that on which both sides have rested it mainly, and on
which, it is manifestly the object to have a decision; namely,
whether this power can be conferred upon the governor con-
stitutionally. We are united in the opinion, that it cannot.

The constitution says, "If the General Assembly shall
deem any law of immediate *importance*, they may provide
that the same shall take effect by publication in newspapers
in the state." Now, it seems as though every word uttered
to explain, or argue upon this passage, would obscure its
simple clearness. If the General Assembly shall deem, &c.,

Scott v. Clark et al.

they may provide, &c." How can it be pretended that *any one else* can judge whether it is important. The discretion, the judgment, is vested in them. The time of its taking effect is as much a part of the act as any other provision, and it may be as important. But counsel ask, have they not provided that the same shall take effect by publication? We answer, no. They have first given to the governor the judgment whether it is of immediate importance, and then, if he thinks it is, they have provided that he may provide that it take effect by publication. The counsel, in arguing that this is not a delegation of legislative power, says: "The law was fully formed, and adopted, and approved by the governor. All its principles, its rules, its provisions, were complete. No legislative action or power was necessary further, and of course none could have been delegated." So true is this, in the light in which we view it, that they provided that it should take effect *from its passage*. But in this they exceeded their powers, and the effect is, that the act passed over under the general provision of law, and went into effect on the first of July. Const. art. 3, § 27; Code, § 22; Laws of 1847, 202; *Calkin* v. *State*, 1 G. Greene, 68.

We are not willing to be led away by the argument, that the time of the taking effect of this act is placed upon a contingency. It is placed upon a *discretion*, a *judgment*. There is not much analogy between the question before us, and that relating to the submission of laws to the people, so far as those cases have arisen within our knowledge, and it seems unnecessary to enter into that much mooted subject. We are, in conclusion, clearly of the opinion, that the aforesaid act of the 25th of Jan. 1855, entitled "An act to relocate the seat of government," did not take effect by publication in the newspapers.

There is a matter connected with the form and manner of this proceeding, which we are obliged to notice. This is an information in the nature of a *quo warranto* under our statute. See Code, chap. 123, page 297. An information being against public officers or corporations, or persons claiming to hold offices in corporations, and only against such per-

sons and bodies, and being partially criminal in its nature, must generally be brought in the name of the state. It can be prosecuted by the public officer only, although he may do it upon the *relation* of an individual, and even for the benefit of such individual. Code, §§ 2151, · 52, 53, 2164. It seems that it cannot be filed without the proper prosecuting attorney, and if he refuses, he may be directed so to do, by the governor, the General Assembly, or District Court. In the case before us, it is in the name of the relator only. A private person cannot so take and handle a high prerogative or state writ. The relator makes this objection against his own doings. It is doubtful how he can make the objection, but it is possible that he may. At all events, the court can prevent such a use of a state proceeding, and will do so. The judgment of the District Court is reversed, and the petition is dismissed at the costs of the relator.